**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**Case No:**

BELCALIS MARLENIS ALMÁNZAR,
an individual

    Plaintiff,

v.

YELEN ENTERTAINMENT, LLC, a
Florida limited liability company, and
CHEICKNA KEBE, an individual

    Defendants.

_____ /

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff BELCALIS MARLENIS ALMÁNZAR ("*Ms. Almánzar*" or "*Plaintiff*"), by and through undersigned counsel, sues Defendants YELEN ENTERTAINMENT, LLC, a Florida limited liability company ("*Yelen*") and CHEICKNA KEBE, an individual ("*C. Kebe*" and, together with Yelen, "*Defendants*"), and states:

## I.  NATURE OF THE ACTION

1.  This is an action by a judgment creditor to recover on two related, but legally distinct judgments entered against Debtor Latasha Transrina Kebe a/k/a "Tasha K" ("*Debtor*"), and her former business entity, Kebe Studios, LLC ("*Kebe Studios*"), by reaching assets that Defendants fraudulently received, concealed, or diverted from Ms. Almánzar's reach. This action is filed pursuant to and consistent with the Confirmation Order [Bankr. S.D. Fla., Case No. 23-14082, Dkt. No. 197] entered in the Bankruptcy case of Latasha Transrina Kebe, Case No. 23-14082 (Bankr. S.D. Fla.) (the "*Bankruptcy Case*"), which expressly preserves Ms. Almánzar's

1

right to commence this action against non-debtor third party insiders and their affiliates (including Yelen and C. Kebe) for the purpose of avoiding the expiration of applicable statutes of repose, and which authorizes the filing of this action notwithstanding any stay or injunction arising from the Bankruptcy Case. Consistent with the Confirmation Order, Ms. Almánzar files this action to preserve her claims against Defendants, and upon obtaining further relief from the Bankruptcy Court authorizing adjudication, she intends to prosecute this action to final judgment.

## Defamation Action and Judgment for Plaintiff

2.      As a result of Debtor's unabated and multi-year long campaign to harm Plaintiff, Plaintiff filed the action styled *Belcalis Marlenis Almánzar v. Latasha Transrina Kebe, et al.*, Case No. 1:19-cv-01301-WMR (N.D. Ga.) (the "***Defamation Action***"), in which Plaintiff pursued claims against Debtor and Kebe Studios for defamation, false light, and intentional infliction of emotional distress.

3.      On January 10, 2022, the District Court for the Northern District of Georgia (the "***Georgia District Court***") commenced a jury trial lasting multiple weeks, and the jury ultimately found Kebe Studios and Debtor liable to Plaintiff on each of her claims for defamation, false light and intentional infliction of emotional distress.

4.      As a result of the willful and malicious nature of their actions, the jury assessed substantial awards of general damages, punitive damages, and litigations expenses, and found Debtor and Kebe Studios were jointly and severally liable for these damages.

5.      On February 17, 2022, the Georgia District Court entered its judgment (the "***Original Defamation Judgment***") [Defamation Action, Dkt. No. 206] in favor of Plaintiff and against Debtor and Kebe Studios. A true and correct copy of the Original Defamation Judgment is attached hereto as "**Exhibit A**."

2

6.     The Original Defamation Judgment noted the jury's award to Plaintiff of:

    a.    $1,000,000 for pain and suffering and/or reputational injury and $250,000 for medical expenses.

    b.  The parties stipulated to reduce the jury's award of medical expenses from $250,000 to $25,000.

7.     The Georgia District Court in its Original Defamation Judgment also included reference to the jury's award to Plaintiff of $1,000,000 in punitive damages against Debtor and $500,000 in punitive damages against Kebe Studios and $1,338,753.47 in litigation expenses against both defendants.

8.     On July 19, 2022, the Georgia District Court entered an Amended Judgment (the "***Amended Defamation Judgment***") [Defamation Action, ECF No. 241]. A true and correct copy of the Amended Defamation Judgment is attached hereto as "**Exhibit B**." The Amended Defamation Judgment established two distinct bodies of liability:

    a.    **The Kebe Studios Judgment.** Kebe Studios was adjudged jointly and severally liable with Debtor for $1,025,000 in compensatory damages (pain and suffering, reputational injury, and medical expenses) and $1,338,753.47 in litigation expenses against both defendants, for a total judgment against Kebe Studios of $2,363,753.47. In addition, the jury awarded $500,000 in punitive damages against Kebe Studios specifically, bringing Kebe Studios' total judgment obligation to $2,863,753.47 exclusive of interest (the "***Kebe Studios Judgment***").

b. **The Personal Judgment.** Debtor was adjudged jointly and severally liable with Kebe Studios for the same $1,025,000 compensatory award and the same $1,338,753.47 litigation expenses, plus an additional $1,000,000 in punitive damages assessed against Debtor individually, for a total judgment against Debtor of $3,363,753.47 exclusive of interest (the "*Personal Judgment*").

c. The Kebe Studios Judgment and the Personal Judgment represent a total judgment liability between them of $3,863,753.47 exclusive of interest, which at the time of Debtor's bankruptcy filing totaled $3,911,680.95. A true and correct copy of Proof of Claim No. 5-1 filed in Debtor's bankruptcy case is attached hereto as "**Exhibit C**."

9. The Amended Defamation Judgment also imposed a permanent injunction against Debtor and Kebe Studios prohibiting them from publishing or republishing the defamatory statements identified in the accompanying consent order.

10. On July 29, 2022, Debtor and Kebe Studios appealed the Amended Defamation Judgment in the case styled *Belcalis Marlenis Almánzar v. Latasha Transrina Kebe, et. al.*, Case No. 22-12512 (11th Cir.).

11. On March 21, 2023, the Eleventh Circuit Court of Appeals affirmed the Georgia District Court's Amended Defamation Judgment [Defamation Action, Dkt. No. 258]. A true and correct copy of the Eleventh Circuit's Opinion affirming the Amended Defamation Judgment is attached hereto as "**Exhibit D**."

12. Neither the Kebe Studios Judgment nor the Personal Judgment has been satisfied.

13.     Debtor is currently the subject of a Chapter 11 Subchapter V bankruptcy case in the United States Bankruptcy Court for the Southern District of Florida, *In re Latasha Transrina Kebe*, Case No. 23-14082-SMG (the "***Bankruptcy Case***"). The Personal Judgment has been excepted from discharge. The Confirmation Order entered in the Bankruptcy Case expressly preserves and authorizes Ms. Almánzar to pursue this action against non-debtor third parties notwithstanding any stay or injunction arising from the Bankruptcy Case to preserve a cause of action that would otherwise be extinguished by an applicable statute of repose. Moreover, the Confirmation Order at ¶ 9 [Bankr. S.D. Fla., 23-14082, Dkt. No. 197] provides that "any such action shall be limited to filing and preserving the claim or cause of action to avoid its expiration under the applicable statute of repose and shall not proceed to adjudication or enforcement without further relief from the Bankruptcy Court."

14.     The scheme giving rise to this action was orchestrated by Debtor and Defendant C. Kebe, Debtor's husband and the co-owner and manager of Kebe Studios. Defendant C. Kebe, in concert with Debtor, carried out two parallel fraudulent schemes:

   a.   **The Kebe Studios Successor Scheme.** Following the entry of the Original Defamation Judgment on **February 17, 2022**, but before the entry of the Amended Defamation Judgment on **July 19, 2022**, C. Kebe formed Yelen on **May 31, 2022** and caused the entire business of Kebe Studios – its operations, revenue streams, clients, management contracts, going-concern value, and the services of Debtor as talent – to be transferred to Yelen without consideration and without paying any of Kebe Studios' judgment obligations. Kebe Studios was then dissolved, leaving it an empty shell with no assets from which Ms. Almánzar could collect the Kebe Studios Judgment. Yelen is Kebe Studios'

5

successor in every meaningful sense and is liable for the Kebe Studios Judgment as its mere continuation.

b.   **The Personal Income Diversion Scheme.** Simultaneously, C. Kebe took a series of steps to render Debtor's personal income and assets unavailable to satisfy the Personal Judgment: he rerouted Debtor's salary and earnings through Yelen's accounts in structures designed to frustrate garnishment; he removed Debtor from bank accounts on which she had been authorized; he caused Debtor to cease receiving direct payment; and he accepted the transfer of Debtor's interest in real property located in Georgia without consideration approximately one month after the Original Defamation Judgment was entered. C. Kebe has repeatedly admitted under oath that these acts were undertaken to help Debtor avoid payment of the Personal Judgment through garnishment.

15.   Ms. Almánzar brings this action for: (i) actual fraudulent transfer under Fla. Stat. § 726.105(1)(a); (ii) constructive fraudulent transfer under Fla. Stat. §§ 726.105(1)(b) and 726.106; (iii) successor liability and mere continuation; (iv) alter ego and piercing the corporate veil; (v) civil conspiracy; and (vi) declaratory relief and imposition of a constructive trust. She seeks avoidance of the fraudulent transfers, money judgment against Defendants jointly and severally in an amount sufficient to satisfy both the Kebe Studios Judgment and the Personal Judgment, plus interest, costs, and attorneys' fees.

## II.   THE PARTIES, JURISDICTION, AND VENUE

16.   Plaintiff Belcalis Marlenis Almánzar is an individual domiciled in the State of New Jersey. She is a citizen of New Jersey for purposes of 28 U.S.C. § 1332. She is also a Grammy

award-winning musical artist, songwriter, and television personality professionally known as "Cardi B." Since the release of her full-length debut mixtape in 2015, Plaintiff's musical works have reached peak positions on charts in the United States and around the world. As a result of the popularity of her music, Plaintiff has tens if not hundreds of millions of fans in the United States and around the world who follow her work and social media profiles.

17.     Defendant Yelen Entertainment, LLC is a Florida limited liability company with its principal place of business in Broward County, Florida. According to Yelen's tax returns, C. Kebe is Yelen's 100% member. A true and correct copy of Yelen's Schedule K-1 for 2022 is attached hereto as "**Exhibit E**." In sworn testimony, however, C. Kebe claimed that his brother, Lassana Kebe, owns a 50% membership interest in Yelen and resides in Mali, Africa. No documentary evidence corroborating Lassana Kebe's membership interest has been produced. To the extent C. Kebe is Yelen's sole member, Yelen is a citizen of Florida. To the extent Lassana Kebe holds any membership interest, he is a citizen of a foreign state (Mali), and Yelen's citizenship includes that of a foreign national. Under either scenario, this Court has subject matter jurisdiction: if Yelen is solely Florida-owned, jurisdiction exists under 28 U.S.C. § 1332(a)(1) as a dispute between citizens of different states; if Yelen is partly foreign-owned, jurisdiction exists under 28 U.S.C. § 1332(a)(2) as a dispute between a citizen of a State and a citizen of a foreign state. In no event is any Defendant a citizen of New Jersey, the state of Plaintiff's domicile, and complete diversity exists under either scenario.

18.     Defendant C. Kebe is an individual domiciled in Broward County, Florida. He is a citizen of Florida for purposes of 28 U.S.C. § 1332.

19.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants reside in this district and a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

### III.     FACTUAL BACKGROUND

**A.     The Defamation Action and the Original and Amended Defamation Judgments.**

21.     Beginning no later than 2018 and continuing through at least 2022, Debtor, through her "Unwine with Tasha K" social media platforms, conducted a sustained and malicious campaign of defamation against Ms. Almánzar, publishing disgusting false and defamatory statements to millions of followers falsely accusing Ms. Almánzar of being a prostitute, having sexually transmitted diseases, engaging in debasing acts and other fabrications.

22.     On January 14, 2022, trial commenced in the Defamation Action. C. Kebe attended the trial as the designated corporate representative of Kebe Studios. He was sworn and testified at trial in that capacity, acknowledging on the record that he was "the manager and half owner, co-owner of Kebe Studios."

23.     On January 25, 2022, the jury returned a verdict in favor of Ms. Almánzar against both Debtor and Kebe Studios. Following the verdict, the Georgia District Court, with C. Kebe present in the courtroom as Kebe Studios' corporate representative, specifically warned both Debtor and C. Kebe not to transfer assets or change their financial condition to impede collection of the anticipated judgment, cautioning that transferring assets "into the names of third parties

could subject them to also possible tort actions in the future." C. Kebe has since testified under oath that he is "smart enough to understand a warning from a judge."

24.     On February 17, 2022, the Georgia District Court entered the Original Defamation Judgment, and on July 19, 2022, the Georgia District Court entered the Amended Defamation Judgment, which was affirmed upon appeal to the Eleventh Circuit.

**B.     Kebe Studios, LLC: The Pre-Judgment Business Vehicle.**

25.     Kebe Studios was a Georgia limited liability company co-owned and operated by Debtor and her husband, C. Kebe. It was the primary vehicle through which Debtor conducted her social media business, utilizing the "Unwine with Tasha K" brand across YouTube, Instagram, Facebook, and other social media platforms, producing video content. Kebe Studios also managed "Tasha K Live," a subscription-based streaming platform.

26.     C. Kebe served as co-owner and manager of Kebe Studios. He was responsible for day-to-day operations, including managing Debtor's social media platforms, overseeing content production, managing independent contractors, making payroll decisions, and controlling Kebe Studios' bank accounts. He handled the financial and operational side of the business while Debtor served as the on-camera talent and content creator.

27.     Debtor was compensated through Kebe Studios. At various times she received W-2 wages from Kebe Studios as an employee. Debtor's CPA, Alicia Thomas, prepared the relevant payroll records and tax filings. C. Kebe provided the underlying information to Ms. Thomas for that purpose.

28.     As set forth above, the Amended Defamation Judgment entered against Kebe Studios totaled $2,863,753.47, comprising $2,363,753.47 in joint and several liability with Debtor,

plus $500,000 in punitive damages assessed against Kebe Studios specifically. Kebe Studios has never paid any portion of the Kebe Studios Judgment.

### C.      The Formation of Yelen and the Successor Scheme.

29.      On May 31, 2022, approximately four months *after* the jury verdict, approximately three months *after* entry of the Original Defamation Judgment, and approximately seven weeks *before* entry of the Amended Defamation Judgment, C. Kebe formed Yelen as a Florida limited liability company. Upon information and belief, C. Kebe is Yelen's sole member and manager.

30.      Yelen was formed with the identical business purpose as Kebe Studios. By C. Kebe's own sworn description, Yelen is "a video production company and a social media management company." Upon Yelen's formation, Yelen assumed management of Debtor's "Unwine with Tasha K" social media platforms, continued the video production business previously operated by Kebe Studios, managed "Tasha K Live," and entered into the same management arrangement with Debtor through the same personnel (C. Kebe) that had previously existed through Kebe Studios.

31.      Although income to and through Kebe Studios was diverted to Yelen as early as July 2022 (when the Amended Defamation Judgment was entered), Kebe Studios was finally wound down and dissolved on April 20, 2023, long after Kebe Studios had any income streams. C. Kebe has testified under oath that Kebe Studios was terminated because "it wasn't being operated properly and because it had a judgment against it." No independent legitimate business reason for the dissolution, and no arm's-length transaction effectuating the transfer of Kebe Studios' business to Yelen, has ever been identified.

32.      An analysis of the income streams of Kebe Studios and Yelen exposes in real time the transfer of assets from Kebe Studios to Yelen. Specifically, Kebe Studio's Tasha K Live

income shifted completely to Yelen halfway through July 2022 (when the Amended Defamation Judgment was entered); and Kebe Studios YouTube income shifted completely from Kebe Studios to Yelen by September 2022. See income analysis attached hereto as "**Exhibit F**."

33.     The dissolution of Kebe Studios and transfer of its business to Yelen was accomplished without Kebe Studios paying any portion of the Kebe Studios Judgment. When Kebe Studios was dissolved, it had no assets with which to satisfy the Kebe Studios Judgment because those assets, including the going-concern value of its business operations, had been transferred to Yelen. Yelen received the full benefit of Kebe Studios' revenue-generating business without assuming any of Kebe Studios' judgment obligations and without paying any consideration therefor.

34.     Yelen stepped directly into Kebe Studios' shoes in every operational respect: it assumed management of the same social media platforms; served the same client (Debtor); performed the same services (content production, platform management, talent management); collected management fees from the same revenue streams; and employed many of the same independent contractors. There was no gap in operations. C. Kebe managed both entities and personally executed the transition from one to the other.

35.     Yelen's management arrangement with Debtor was never reduced to writing, and C. Kebe has been unable to identify in sworn testimony a single written term of any agreement between them. Despite that, he confirmed that he managed Debtor's platforms full-time and structured his compensation by deducting management fees from Debtor's revenue before remitting the balance: "I deduct my fees, and then whatever is left, she gets." This arrangement is functionally identical to what Kebe Studios did before it was dissolved.

**D.      The Personal Income and Asset Diversion Scheme.**

36.      In parallel with the Kebe Studios successor scheme, C. Kebe and Debtor undertook a series of coordinated financial maneuvers designed to render Debtor's personal income and assets unavailable to satisfy the Personal Judgment. These acts were deliberate and have been repeatedly admitted under oath across multiple depositions of Debtor and C. Kebe.

37.      In August 2022, right after the Amended Defamation Judgment was entered, C. Kebe removed Debtor as an authorized user from a Bank of America account through which her payroll had been deposited. He has confirmed under oath that this was done expressly to avoid garnishment.

38.      Debtor asked C. Kebe to stop paying her directly from Yelen's accounts in order to avoid garnishment, and C. Kebe complied. He has acknowledged this under oath.

39.      Less than one month after entry of the Original Defamation Judgment, on March 10, 2022, Debtor transferred her interest in residential real property located at 398 Dunleven Manor Walk, Georgia (the "***Georgia Property***") to C. Kebe. A true and correct copy of the quitclaim deed is attached hereto as "**Exhibit G**." The transfer was made without real consideration and for no reasonably equivalent value. When asked why he did not reverse the transfer upon learning of it, C. Kebe testified: "I wanted to help her avoid garnishment." When asked directly whether he was helping Debtor avoid paying Ms. Almánzar, he answered: "Yes."

40.      Each of the foregoing acts, the diversion of Debtor's income through Yelen's accounts and structures, the removal of Debtor from bank accounts, the rerouting of payroll, and the transfer of the Georgia Property, was undertaken with the admitted purpose of hindering, delaying, and defrauding Ms. Almánzar as a judgment creditor of Debtor.

**E.      The Bankruptcy Case and Authorization to File.**

41.      Debtor filed for Chapter 11 Subchapter V bankruptcy relief on May 5, 2023. The Personal Judgment has been expressly excepted from discharge in the Bankruptcy Case.

42.      The Confirmation Order entered in the Bankruptcy Case expressly preserved Ms. Almánzar's right to pursue all claims and causes of action against non-debtor third parties, including Defendants herein, and authorized the filing of this action notwithstanding any stay, discharge injunction, or other injunction arising from the Bankruptcy Case in order to preserve a cause of action that would otherwise be extinguished by an applicable statute of repose.

## IV.      CAUSES OF ACTION

### COUNT I  ACTUAL FRAUDULENT TRANSFER

### (Fla. Stat. § 726.105(1)(a) - Against All Defendants)

43.      Plaintiff re-alleges and incorporates by reference paragraphs 1 through 42 as if fully set forth herein.

44.      Florida Statute § 726.105(1)(a) provides that a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor.

45.      Ms. Almánzar is a creditor of both Debtor and Kebe Studios by virtue of the Amended Defamation Judgment. The Amended Defamation Judgment is a final judgment of a federal court that has not been satisfied, vacated, or discharged.

46.      Debtor and Kebe Studios, acting through and in concert with C. Kebe, made the following transfers with actual intent to hinder, delay, and defraud Ms. Almánzar:

    a.     The transfer of Kebe Studios' business operations, revenue streams,

           management contracts, going-concern value, and the services of

13

Debtor as talent, from Kebe Studios to Yelen, rendering Kebe Studios unable to satisfy the Kebe Studios Judgment;

b. The dissolution of Kebe Studios after stripping it of all assets and income-generating capacity, leaving it a judgment-proof shell;

c. The transfer of Debtor's interest in the Georgia Property to C. Kebe approximately one month after entry of the Original Defamation Judgment, without consideration; and

d. The diversion of Debtor's income and earnings through Yelen's accounts and financial structures specifically designed to prevent garnishment by Ms. Almánzar.

47. The actual fraudulent intent of each transfer is established by, among other things, the following conspicuous badges of fraud: (a) the transfers were made to and for the benefit of an insider (C. Kebe, Debtor's husband and business partner); (b) the transfers were made after the jury verdict and concurrent with or shortly after entry of the Amended Defamation Judgment; (c) the transfers were made without reasonably equivalent value; (d) Debtor and Kebe Studios were insolvent or rendered insolvent by the transfers; (e) C. Kebe received the court's direct warning as Kebe Studios' corporate representative not to transfer assets; (f) Defendants have repeatedly admitted under oath that the purpose of the transfers was to avoid garnishment and payment of the Amended Defamation Judgment; and (g) Yelen was formed after entry of the Original Defamation Judgment and prior to entry of the Amended Defamation Judgment, and assumed Kebe Studios' entire business without any consideration passing to Kebe Studios or its creditors.

48.     C. Kebe was not a passive recipient. He actively planned, directed, and executed each of the transfers described herein, was the primary beneficiary of those transfers, and admitted under oath both the transfers and their fraudulent purpose.

49.     Pursuant to Fla. Stat. § 726.108, Ms. Almánzar is entitled to avoidance of the transfers to the extent necessary to satisfy both the Kebe Studios Judgment and the Personal Judgment; attachment or other provisional remedy against the transferred assets; an injunction against further disposition of the assets or the proceeds thereof; appointment of a receiver; and any other relief the circumstances may require.

### COUNT II  CONSTRUCTIVE FRAUDULENT TRANSFER

### (Fla. Stat. §§ 726.105(1)(b) and 726.106 - Against All Defendants)

50.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 42 as if fully set forth herein.

51.     Florida Statute § 726.105(1)(b) provides that a transfer is fraudulent as to a creditor if Debtor made the transfer without receiving a reasonably equivalent value in exchange and Debtor intended to incur or believed or reasonably should have believed that she would incur debts beyond her ability to pay as they became due.

52.     Florida Statute § 726.106(1) provides that a transfer is fraudulent as to a creditor whose claim arose before the transfer if Debtor made the transfer without receiving a reasonably equivalent value in exchange and Debtor was insolvent at the time or became insolvent as a result of the transfer.

53.     Ms. Almánzar's claims, arising from the defamation judgment, arose prior to each of the transfers described herein. Accordingly, she qualifies as a creditor under both Fla. Stat. §§ 726.105(1)(b) and 726.106(1) with respect to all transfers.

54.     The transfers of Kebe Studios' business to Yelen, the transfer of the Georgia Property to C. Kebe, and the diversion of Debtor's income through Yelen's accounts were each made without the transferor receiving reasonably equivalent value. Yelen paid nothing for the business, going-concern value, and revenue streams it received from Kebe Studios. C. Kebe paid nothing for the Georgia Property interest he received from Debtor. The diversion of Debtor's income through structured accounts yielded no consideration to Debtor or Kebe Studios.

55.     At the time of each transfer, both Debtor and Kebe Studios were insolvent within the meaning of Fla. Stat. § 726.103, or the transfers rendered them insolvent. The Amended Defamation Judgment, whether pending or entered, constituted an obligation that far exceeded Debtor's and Kebe Studios' available assets. The Kebe Studios Judgment alone totaled $2,863,753.47 exclusive of post-judgment interest which has been accruing; after the business transfer to Yelen, Kebe Studios had no assets to satisfy any portion of that obligation.

56.     Ms. Almánzar is entitled to the same remedies set forth in Count I above, pursuant to Fla. Stat. § 726.108.

### COUNT III  SUCCESSOR LIABILITY / MERE CONTINUATION

**(Against Yelen Entertainment, LLC)**

57.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 42 as if fully set forth herein.

58.     Under Florida law, a successor entity is liable for the debts and obligations of its predecessor where the successor is a mere continuation of the predecessor. The mere continuation doctrine applies where there is a continuity of management, personnel, location, assets, business operations, and general business enterprise, accompanied by a cessation of the predecessor's

operations and the successor's assumption of the predecessor's business without paying adequate consideration.

59.     Kebe Studios is the predecessor entity whose judgment obligations Yelen assumed by operation of law as its mere continuation. The Kebe Studios Judgment totaling $2,863,753.47, exclusive of post-judgment interest which is accruing, was outstanding and unpaid at all times relevant hereto.

60.     Yelen is the mere continuation of Kebe Studios. Every material indicia of continuation is present: (a) C. Kebe managed Kebe Studios and is the sole member and manager of Yelen; (b) Yelen performs the identical services that Kebe Studios performed social media management, video production, and management of Debtor's brand and platforms; (c) Yelen serves the same client (Debtor) through the same platforms ("Unwine with Tasha K," "Tasha K Live"); (d) Yelen employs or engaged many of the same independent contractors as Kebe Studios; (e) Kebe Studios ceased operations concurrent with and as a direct result of Yelen's assumption of the business; and (f) Yelen received the entire going-concern value of Kebe Studios' business without paying any consideration to Kebe Studios, its creditors, or anyone else.

61.     The purpose and effect of the dissolution of Kebe Studios and the transfer of its business to Yelen was to allow the Defendants to continue operating the identical business while eliminating the liability that attached to Kebe Studios as a result of the Amended Defamation Judgment. Kebe Studios was dissolved with a judgment against it and no assets from which to pay it, because those assets had been fraudulently transferred to Yelen.

62.     As the mere continuation of Kebe Studios, Yelen is liable for all debts and obligations of Kebe Studios, including the Kebe Studios Judgment in the amount of $2,863,753.47, plus interest accrued thereon.

17

## COUNT IV  ALTER EGO / PIERCING THE CORPORATE VEIL

### (Against Cheickna Kebe)

63.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 42 as if fully set forth herein.

64.     Under Florida law, a court may pierce the corporate veil of a limited liability company and hold its members personally liable where: (a) the member dominated and controlled the entity to such a degree that it lacked independent existence; (b) the corporate form was used as a device to perpetrate fraud or evade an existing legal obligation; and (c) the plaintiff suffered injury as a result.

65.     C. Kebe is the sole member and manager of Yelen. He formed Yelen, capitalized it, controls all of its financial and operational decisions, determines unilaterally how revenue is allocated between himself and Debtor, and is the exclusive decision-maker for all Yelen business. By his own sworn testimony, he decides how much Debtor is paid and how much Yelen retains. Yelen maintains no written management agreement with Debtor, observes no formalities in connection with that relationship, and operates entirely at C. Kebe's personal direction. There is no meaningful separation between C. Kebe and Yelen.

66.     Yelen was formed and is operated not as a legitimate independent enterprise but as an instrument of the fraudulent scheme described herein. C. Kebe used Yelen's corporate form to receive the assets and business of Kebe Studios without paying the Kebe Studios Judgment, to hold assets transferred from Debtor to frustrate the Personal Judgment, to receive and conceal Debtor's earnings, and to render both the Kebe Studios Judgment and the Personal Judgment uncollectable. Yelen is the alter ego of C. Kebe.

67.     Adherence to the fiction of Yelen's separate legal existence would sanction the admitted fraud described herein and promote manifest injustice. Ms. Almánzar is entitled to a judgment piercing Yelen's corporate veil and holding C. Kebe personally liable for all obligations of Yelen established in this action, including the full amount of any judgment entered against Yelen herein.

68.     Additionally, the sham nature of Yelen's corporate structure is further evidenced by C. Kebe's sworn testimony claiming that his brother, Lassana Kebe, a resident of Mali, Africa, holds a 50% membership interest in Yelen,  a claim directly contradicted by Yelen's own corporate filings and tax returns, which reflect no such interest. No documents evidencing Lassana Kebe's purported membership interest have been produced in discovery during the course of Debtor bankruptcy case. The assertion of an undocumented, unverifiable, overseas co-owner appearing for the first time in sworn testimony and unsupported by any corporate record is consistent with the use of Yelen's corporate form as a personal instrument of C. Kebe rather than as a legitimately organized and maintained business entity.

## COUNT V  CIVIL CONSPIRACY

### (Against All Defendants)

69.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 42 as if fully set forth herein.

70.     Under Florida law, a civil conspiracy requires: (a) an agreement between two or more parties; (b) to do an unlawful act or to do a lawful act by unlawful means; (c) the doing of some overt act in pursuance of the conspiracy; and (d) damage to the plaintiff as a result.

71.     C. Kebe, Yelen (along with Debtor)[1] knowingly agreed and conspired to accomplish the fraudulent scheme described herein: to strip Kebe Studios of its assets and transfer them to Yelen to avoid payment of the Kebe Studios Judgment; and to divert and conceal Debtor's personal income and assets to avoid payment of the Personal Judgment. The unlawful means employed included the fraudulent transfers described herein, the dissolution of a judgment-debtor entity without satisfying its obligations, and the deliberate structuring of financial arrangements to frustrate judicial process.

72.     In furtherance of the conspiracy, Defendants committed the following overt acts, among others: (a) C. Kebe formed Yelen within months of the jury verdict; (b) Kebe Studios' business, revenue streams, and going-concern value were transferred to Yelen without consideration; (c) Kebe Studios was dissolved with the Kebe Studios Judgment outstanding and unpaid; (d) Debtor's interest in the Georgia Property was transferred to C. Kebe without consideration shortly after entry of the Original Defamation Judgment; (e) Debtor was removed from bank accounts through which her earnings had been deposited; (f) Debtor's payroll and income were rerouted through Yelen in structures designed to prevent garnishment; and (g) no legitimate business justification, written agreement, or consideration was established for any of these transactions.

73.     As a direct and proximate result of the conspiracy, Ms. Almánzar has been damaged in an amount sufficient to satisfy both the Kebe Studios Judgment ($2,863,753.47) and the Personal Judgment ($3,363,753.47), together with pre- and post-judgment interest, costs, and attorneys' fees.

---

[1] Count V is asserted against Defendants Yelen and C. Kebe alone, based on their participation in the scheme with Debtor, even though Debtor is not named as a Defendant as a result of Debtor's bankruptcy case.

## COUNT VI  DECLARATORY RELIEF AND CONSTRUCTIVE TRUST

### (Against All Defendants)

74.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 42 as if fully set forth herein.

75.     An actual, present, and justiciable controversy exists between Ms. Almánzar and Defendants concerning: (a) the validity and avoidability of the transfers of Kebe Studios' business to Yelen; (b) Yelen's liability as the mere continuation of Kebe Studios for the Kebe Studios Judgment; (c) the validity and avoidability of the transfer of the Georgia Property to C. Kebe; and (d) the right of Ms. Almánzar to reach the assets held and hidden by Defendants to satisfy the Amended Defamation Judgment.

76.     Pursuant to 28 U.S.C. § 2201 and Fla. Stat. § 86.011, Ms. Almánzar is entitled to a declaration that: (a) the transfers of Kebe Studios' business and assets to Yelen are void or voidable as fraudulent transfers; (b) Yelen is the successor to and mere continuation of Kebe Studios and is liable for the Kebe Studios Judgment; (c) the transfer of the Georgia Property from Debtor to C. Kebe is void or voidable as a fraudulent transfer; and (d) Defendants hold assets received through the fraudulent scheme described herein in constructive trust for the benefit of Ms. Almánzar to the extent necessary to satisfy the Amended Defamation Judgment.

77.     Defendants are unjustly enriched by their retention of assets obtained through the fraudulent scheme. A constructive trust should be imposed over: (a) all assets and business operations transferred from Kebe Studios to Yelen, and the proceeds and revenue derived therefrom; (b) the Georgia Property and any proceeds thereof; and (c) any other assets traceable to transfers made in furtherance of the scheme, for the benefit of Ms. Almánzar to the extent necessary to satisfy both the Kebe Studios Judgment and the Personal Judgment.

## PRAYER FOR RELIEF

Ms. Almánzar respectfully requests that the Court enter judgment in her favor and against Defendants Yelen and C. Kebe, jointly and severally, as follows:

a.      Avoidance of all fraudulent transfers identified herein, pursuant to Fla. Stat. § 726.108;

b.      Money judgment against Defendants, jointly and severally, in an amount sufficient to satisfy the Kebe Studios Judgment ($2,863,753.47) and the Personal Judgment ($3,363,753.47), together with pre- and post-judgment interest as provided by law;

c.      A declaration that Yelen is the mere continuation and successor of Kebe Studios, and is liable for the Kebe Studios Judgment and all other obligations of Kebe Studios;

d.      A declaration that Yelen is the alter ego of C. Kebe, and that C. Kebe is personally liable for all obligations of Yelen established in this action;

e.      Imposition of a constructive trust over: (i) all assets, business operations, revenue streams, and going-concern value transferred from Kebe Studios to Yelen, and all proceeds and revenue derived therefrom; (ii) the Georgia Property and any proceeds thereof; and (iii) any other assets traceable to transfers made in furtherance of the fraudulent scheme described herein;

f.      A preliminary and permanent injunction restraining Defendants from further transferring, encumbering, or disposing of any assets subject to avoidance or constructive trust pending resolution of this action;

g.      Attorneys' fees and costs to the extent permitted by law;

22

h.       Such procedural relief as is necessary to implement the terms of the Confirmation Order entered in *In re Latasha Transrina Kebe*, Case No. 23-14082-SMG (Bankr. S.D. Fla.), including entry of an order holding this action in abeyance pending Ms. Almánzar's obtaining further relief from the Bankruptcy Court authorizing adjudication on the merits, or in the alternative, treating this action as filed for the purpose of preserving Ms. Almánzar's claims against the applicable statute of repose, with further proceedings to be authorized upon order of the Bankruptcy Court; and

i.       Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for any and all issues triable by a jury.

Dated: May 6, 2026.

Respectfully Submitted:

By: */s/James C. Moon*
James C. Moon, Esquire
Florida Bar No. 938211
jmoon@melandbudwick.com
MELAND BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Plaintiff*
*Belcalis Marlenis Almánzar*